He may proceed. Welcome back. Good morning, Your Honor. I should say, Mr. Christie, we had Mr. Parker here yesterday, so that's why we're welcoming him back. He gave us the business yesterday, Mr. Christie. Oh, okay. All right. Well, I represent the plaintiff and the appellant in this case, and the cross appellee. And the primary issue for me in this appeal is whether or not qualified immunity should ever be submitted to a jury. And we submit that qualified immunity is always a question of law. And it has to be that way because if you allow a jury to decide qualified immunity, the jury is going to be making rules that other courts will have to follow. Mr. Parker, I follow your reasoning. Let me ask you this. I have two questions. What portion of Instruction 20 and 21 tells the jury that they can decide what is, quote, clearly established law? Because the language about would every reasonable officer have behaved that way is a qualified immunity instruction, and it's just a variation of whether or not that rule was clearly established. There is no direct instruction to the jury. It's up to you to decide what the clearly established law is, correct? That's correct. Secondly, did you propose an instruction to be given by the judge as to what clearly established law was? No, because I think it's improper. Because you made the argument, as I understood below, is you shouldn't give that instruction or a variation on clearly established law because that's for the court, not the jury, right? Yes. And because what you'll do is you'll establish precedent. You will allow a jury to establish precedent. And so when future litigants come in the court, they'll say, well, this jury said that this was clearly established, or this jury said that based on these facts a reasonable officer would have known that he was violating the law. That's problem A. Problem B is the standard of review. If a jury is deciding an issue of fact and we have to give deference to the jury's determination of facts, then when the court would review what the jury did with respect to qualified immunity, it would have to give the jury that deference, and that would create all kinds of problems. Qualified immunity has to be a question of law. So let's just imagine, I guess the issue here is that because let's speak first to Fry, Ms. Fry. So there basically the verdict is in favor of Ms. Fry, correct? Right, but it's a general verdict. It's a general verdict. So we don't know which of these they didn't find in effect of the so-called qualified immunity instruction. Is that fair to say? It's fair to say. We don't know whether or not. They didn't find both like they did as to the other officer, but they might have found one but not the other. Is that right? That's my argument. Okay. So now the case goes back. Let's say it goes back to trial. Do you agree that there should be an instruction that would permit the jury to determine whether there was excessive force? Yes. Okay. And that's a factual issue? Yes. Okay. Would there be, in your view, if this went back, would there be specific interrogatories with respect to that? I think that if the defendant argues that we will be deprived of our qualified immunity defense, the jury would have to answer a question that allows us to determine that they found that the force was either reasonable or unreasonable. And then the issue of whether or not there was qualified immunity would be determined by the court. And the court would determine that on a rule 50, on a motion essentially for a directed verdict before it went to the jury? I mean, and after it went to the jury? 50A and 50B. 50A and B. Yes. All right. I think it has to be that way. Okay. I held back just a little because I wanted everybody to have the chance here. My worry about what you argue is that it seems to me that all of my case laws suggest you're wrong. In fact, Thorsten v. Kelly, they gave the same kind of instruction to the jury. Ortega, they gave the same kind of instruction to the jury. I can explain all of that. You can explain it, but that's exactly what my court said to do. In Sloman v. Tadlock, they gave the same instruction to the jury. Every time my court comes down, I've got two different flavors on my court. One of the flavors on my court is with you, that we should have, first of all, a jury verdict as it relates to whether there was a constitutional violation. And then the court determines on its own whether, in fact, there is any law which would suggest the policeman should have known about that, and therefore he doesn't get qualified immunity. Based on what? That's one set of cases. The other set of cases is just the opposite. It says, yes, they can make a jury verdict on the question one. On question two, after you determine whether there might or might not be precedent, which would be something the officer should know about, then the jury gets to say, and I quote from Thorsten, whether a reasonable officer placed in circumstances faced by Kelly could reasonably believe that his conduct was legal is a fact-specific question. And they allow the jury then to get there. Now, my problem is I've been a district judge before, and I got these two strains, and now you're suggesting that I should throw out what you've done here because I'm following one strain but the other strain I'm not following. May I explain? Yeah. Yeah. Because all those cases were wrongly decided because the Ninth Circuit and several other circuits prior to Saucere had a habit of saying, look, if we allow jurors to decide a reasonable standard, and which we did, then the two standards morph into one. In other words, if it was reasonable for the officer to use the force that he used, then obviously he's being reasonable, and therefore the two standards morph. And then came Saucere in 2001, and the court said, no, you cannot do that. Saucere said you had to separate the two. We haven't changed our mind on that since Saucere. That's right. We've continued to say the same thing. Let's look at the cases, okay? We've got Saucere is 2001. Ortega is 1998. That's right. So when is Thorston? The cases of the year, but, Your Honor, what's happened is that Ortega makes the statement, and then courts after Saucere continue to rely on some of the language in Ortega. In fact, I can't recall the name of the case right now, but there was a second case cited by defense counsel. They rely on Ortega for the proposition that you can do this. When the Ninth Circuit was doing that, Saucere stopped them. They said you cannot do that. You cannot combine both issues because the reasonableness in the first issue is not the same as the reasonableness in the second issue. Well, then we went in toward two. In 2009, we seemed to suggest what Judge Smith calls kind of the second line of cases, which is post-Saucere and post-Pearson. Of course, that's another clarification we now have. We have Saucere and Pearson, 2001-2009. No panel is supposed to be overruling a different panel, but there is some confusion here. I guess I'd be interested in your thought on why do you think Saucere and Pearson actually changed, then, how we should look at this. Because Saucere basically told the Ninth Circuit to stop doing that, to stop combining the two different. What the Ninth Circuit was doing was morphing both issues together, just like the judge did in this case. Saucere said, no, you cannot do that. Even in the Torture case, even with Justice, I believe it was you who descended in that case. It was. It was still an issue of law. The second prong of the qualified immunity issue was still a question of law. In fact, he commented that it's a question of law, and he commented that the majority was relying on the fact that it was a question of law. It has to be a question of law because we'll get inconsistent verdicts. We'll get inconsistent standards of review. Sometimes the standard review will be whether or not the jury had enough facts to do that. Even more important, as a litigant, you put on your case, you put on your evidence. There's no way that you can anticipate a judge is going to give an instruction like that, because how is the jury going to determine what every officer would have done unless the jury knows what the law has been, how the case law has developed? It's an impossible standard. Let me ask you about, I don't want to use all your time on Ms. Fry, but I do want to ask you about Officer Reese. So in Officer Reese, the jury must have found that there was a problem on both aspects of the instruction because there's a verdict against Officer Reese, correct? Correct. But there's a little bit more factual basis for the verdict. Okay, now we have the verdict. My question really then is, even with that verdict, the district court has the opportunity to determine whether there should be qualified immunity. Given that we've all watched the movies that were submitted here, given the short period, this sort of tumultuous situation, the fact that she hadn't yet been handcuffed and was seemingly getting up, do you have a case that would basically say that is excessive force under circumstances like that? I don't have a case directly on point, but remember, Reese's defense was that, one, it was an accident, and two, when it happened, she was prone. He changed his testimony at trial and then said that she was standing up. And if you look at the entire video, you will see that Officer Reese is So at the time that the district court would look at it, which is post-verdict now, the district court is coming back and saying, okay, now I have to decide qualified immunity. We now have the video. We have the testimony. We have all that in, correct? Correct. And we also have a jury verdict that had to conclude that Officer Reese lied, that his testimony that this was an accident, he didn't know he did it, was not true. But at this point, I'm still going to take the facts in favor of your client, which is it isn't any accident. He purposely, in this circumstance, used the spray. My question then is, why was that in violation of clearly established law, and which clearly established law was it in violation of? If you take the facts in a light most favorable to my client because of the jury verdict, you would have to find that they had an earlier encounter where Ms. Morales used the profanity or curse words at him, that he remembered this encounter several years later because it stuck in his head so much, and that when she was completely being controlled by a group of other officers, he came from a distance away, came over to her for no reason, sprayed her in the face with the pepper spray, took her to the ground, handcuffed her, and then lied about what happened in his police report. That's if you take the facts in a light most favorable to us. Well, just a minute. I'm not sure that's exactly what the jury found because Judge McEwen has, frankly, put my question that I was about to put to you. It seemed to me that what the jury found, that your client had been taken to the ground but was standing upright and moving away from the officers, that your client was not in handcuffs, that your client was struggling with the officers, and then he pepper sprays her. Yeah, but you're not taking the facts in a light most favorable to us. Well, I'm taking the facts the jury found because the jury found when they were dealing with the other defendant that there was probable cause, that what that defendant did was absolutely reasonable, and that that defendant did. So I've got to take all those facts into consideration as well. No, but you don't know what the jury found with respect to Officer Fry. Well, you know what they found because you know what their verdict was, and you know what the verdict suggests. They were given a second opportunity because you have one verdict, you have one portion of the instruction that says, was the force that was used reasonable? You have one portion that says, was there probable cause to arrest? And then you have, even if you find that the force was unreasonable, even if you find there was not probable cause to arrest, then you have to find would every officer have also concluded that? So we don't know which the jury found. Well, my worry about that is if I try to take those facts as found by the jury, I don't have a case which definitely says under White that what the officer did was he was on notice not to do. In this case. And I want you to give me the good case. There is not a case exactly on point because you're not going to. Well, then if there isn't, White says, let the officer go. No, I don't believe that's correct. Did you read White? Yes. How does White differ from that? If you have a case that's directly on point, obviously that case should be cited. But with the way the courts decide qualified immunity, being allowed to decide the second prong first as opposed to the first prong, you may never get cases exactly on point. The issue is the state of the law. Did it put a reasonable officer on notice that what he was doing was wrong? And if you deliberately pepper spray somebody because you've had an encounter with them at an earlier part of the day where you're upset and there's no need for you to interact at all, there are plenty of officers there to control this person. You come from another location and you spray her and then lie about it, you don't get qualified immunity. Okay, I think you've exceeded your time unless there's more questions. And so I have no time left for rebuttal. No, I'm going to give you a minute for rebuttal. Good morning. May it please the Court, my name is Bob Christie. I'm here this morning on behalf of appellee Sonia Frey and the appellee and the cross-appellant Brian Reese. I'm going to try and reserve three minutes for rebuttal on the issues that are raised in cross-appeal, if I may. Just argue the case. I'll just argue the case. Thank you, Your Honor. Judge Bay, to go directly to your question, if you look at the instruction that Judge Kuhnhauer gave here, instructions 20 and 21, and they are patterned precisely out of the language in Ortega, precisely. There is nothing in there that asks the jury to make any determination about the state of the law. There is an expression used that they are to determine whether or not the officer believed at the time that she acted, whether her actions were in accordance with the law. And it was made clear in that instruction that this is an objective test. It is not subjective. What is critical about those instructions is they do not ask for the jury to determine what has been clearly established as law. And what you see throughout counsel's briefing is a statement that the judge made a mistake. He erred in submitting the legal question of whether the law was clearly established to the jury. That's his claim in framing his argument, and I presume that's the basis for your question. That simply didn't happen. And, of course, when you view instructions, you have to view the entire set of the instructions, and that's why we submit that the standard of review is whether there's been an abuse of discretion. Let me ask you this. Yes, Your Honor. Why would a reasonable belief be a complete defense when it's not actually? It's not just a reasonable belief. It has to be based on established law, so there's something missing in the instruction. And it may be that you weren't supposed to ask the jury that, but it isn't. Basically, what you're saying is with, well, I think I was permitted to arrest her, and I reasonably believed I was, therefore I'm off the hook. Well, that's not the law. That is not the law, but the instruction makes it clear that it's an objective test. But I would point this out, Your Honor. Based on what? Based on instructions 15 through 19. If you look at those instructions, and clearly if you look at the language that Judge Kunauer put in his order denying the 50B motion, he goes on at some length to explain why he did what he did. And what he did was to give the jury a body of instructions that outlined in great detail the law relating to probable cause, the law relating to excessive force when it was appropriate, laid out the gram factors in one of the instructions. So from his perspective, he is giving a detailed set of instructions that set forth the law. Yes, Your Honor. Just a minute, if I might interrupt you. Is what Kelly reasonably believed about his conduct, is that a fact which is applicable for the constitutional violation? Well, the ultimate test. No, just a minute. For the constitutional violation of unreasonable force, is it a consideration for me to decide whether Kelly could reasonably have believed that his conduct was legal? Reese, are we talking? Yes. Excuse me. I was quoting from Thorston v. Kelly. Yes. Go ahead. I don't believe a state of mind is a factor in determining whether or not there's a constitutional violation. So if there's no basis for this jury instruction 20 in the constitutional violation, then what is the basis for it at all? Jury instruction number 20 was specific to the unlawful arrest against Sonia Frye. I understand. I go to 21. It's the same. Okay. Same thing. 21 is the same. All I'm trying to say is both of those were directed as to the reasonable belief of the officer. So if the reasonable belief of the officer has nothing to do with the constitutional violation, what is the reason to give the instructions? The instruction, I think, has to be read as a whole. The following sentence in that instruction makes it clear that the reasonableness of the belief is an objective fact, is an objective fact. But that doesn't matter whether it's objective or subjective. If it has no basis in determining what the constitutional violation is, then why give the instruction? If, in fact, the judge is to make the legal determination of whether the cop was on notice. I'm speaking for Judge Kunauer here. Why did he give this instruction? The best I can divine is what he said in his 50B order denying summary judgment or denying the motion post-trial. And from his perspective, first of all, he's using language that was pulled from a case, as the court has noted, a bit of a predicament for district court judges. They're given a case that's been approved and has particular language. That language was submitted as a proposed instruction, and it was accepted by the court as a proper statement of the law. And he provided that in the context of a series of other instructions. I think an important component of this, too, and something that wasn't argued is the issue that we raised, that this is a harmless error. There isn't any claim in this case that there isn't substantial evidence in the record to support the findings in favor of Sonia Frye. That is not an assignment of error, and it has not been argued. This is quite a narrow appeal. And, of course, the court is very familiar with the standard for harmless error. And if you can view the instructions as a whole and they fairly allow the parties to present their case and there is substantial evidence to support the verdict, then the instruction is harmless. And I submit that you could apply that here and come out with that conclusion. Well, to Frye, but what about to Reese? Well, let me talk specifically about Reese because it is the issue that we've raised on cross-appeal. And the court, I believe, has hit the nail on the head. So I'll talk about prong two. I believe this court can independently undertake an analysis of prong one. But we have certain facts now that have been decided. We know the jury determined that the application of the pepper burst, which is, I'll call it a microburst, because it is literally a quarter of a second at longest, was intentional and not inadvertent. We know, as Judge McKeown, you pointed out, this was a tumultuous situation. This was a declared state of emergency. This was a situation where officers were attempting to secure people quickly under arrest and not have a prolonged struggle. And the court has viewed the video, which shows that the very bike line that we're talking about that set the stage for the contact between the plaintiff and Officer Frye was a bike line established to protect officers that were trying to secure an individual that was actively resisting. And that was creating the very tumult that resulted in this situation. So what we have is an officer that, under the jury's finding, deployed a microburst of pepper spray at a point in time when Ms. Frye, we know there was probable cause to arrest her, we know she's lawfully being secured under arrest, and we know that at the time that burst was applied, she had gotten to her feet and was not under control. So she is actively resisting. If you go through the other Graham factors, she's not a significant threat to the police in isolation because she's not committing a serious offense, but there is a threat to the public by virtue of there being a prolonged struggle to secure her under arrest. And the court does, under White, have to look for a case on point. There is no case dead on, to use Your Honor's expression, but let's look at the... Well, I don't read White as a dead on requirement, and I don't think you do either. No, I do not. I'm just echoing Judge Smith. He's echoing me. He's echoing that soundbite. I'm echoing that soundbite, but it is important to look at the state of the law. In the Young case, which obviously you're very familiar with, having been part of that panel in Young v. L.A. County, the facts there tell officers after 2011, August of 2011, that if you intentionally pepper spray someone, they're a multi-second burst. First, when the person's sitting on the ground, stands up, and starts walking away. That if you do that when he is absolutely no threat, that is improper, and that is a violation of the Fourth Amendment. That's clear, and any officer that does that after then needs to be on notice that that is not going to fall within qualified immunity. There are a few other cases that we can look to out there. Jackson v. City of Bremerton was a decision by Judge Tallman in 2001. In that case, the individual was pepper sprayed when she went and interfered with police attempting to secure her son in arrest. And the pepper spray there was a burst that was applied and hit her in the hair. It was a time when she was struggling. It made that point, and that was the message to the officers at that time, that someone who is not secured, that is in the process of being arrested and is continuing to struggle, there's a basis for using pepper spray. Another case that is cited that is a case you were involved in, 2007, the Harveston v. Cunningham, an unpublished decision written by Judge Tallman. Excuse me, actually, Judge Bay, you were involved in that case. That was a person that was pepper sprayed when, undisputedly, according to the officer, all that person was doing was turning their back away from the officer at a point in time when they were in handcuff. The point of that decision and the reason I mention it is because there was a finding that it was not clearly established as of then, 2007, in the Ninth Circuit, that pepper spray application under those circumstances was excessive. And so we really have no case beyond Young that would speak to this unique set of facts. And it's not so unique, and you don't need a case on all fours, but this is, in a declared state agency, a brief burst of pepper spray to a person that's actively resistant and is lawfully under arrest. And I submit to you that it was not so clearly established beyond debate, beyond dispute, as the cases use that phrase, to instruct a police officer that a microburst of pepper spray in that circumstance was a violation of the Fourth Amendment. So what do you make, though, of the, if you're stuck with this jury instruction, which is a pre-saucier creation, but with respect to Reese, the jury rejected the fact that he had a reasonable belief that he could use this excessive force. We know that at least as to Reese, they had to find all the things in the jury instruction against Mr. Reese, Officer Reese, right? So given that, if you have a factual finding that there was no reasonable belief, how does that intersect with established law? And if it doesn't, then wasn't it wrong, as Judge Smith suggests, to insert the reasonableness into the constitutional violation prong of saucier? I'll admit to you that it's imperfect, but I don't think it's in contradiction because I do believe... It's kind of incomprehensible to me. It's imperfect and incomprehensible, so maybe you can explain it. I'll explain it, and it's described in our brief, but I don't think it's at all inconsistent. This court, and certainly White, which came down even after this case was decided, makes it clear that it is a legal question for this court to determine on prong two whether or not there's a case sufficiently close on point to instruct an officer about whether or not they are taking action which every officer, not any officer, which every officer would view as being unconstitutional. And so I don't think this court gives up that despite an instruction under Ortega framed in terms of the pretty clear instruction in terms of when force can be used, what the factors are in using force. I don't think that surplants this court's role. Well, it could possibly be harmless error as to Mr. Reese, but as to Frye, what work does the reasonable belief do on the constitutional prong, the constitutional violation? Without trying to be repetitive, I'm left with having to look at the instruction as a whole and the language in that instruction that makes it clear that the test for reasonableness and the reasonableness of the belief is an objective test. That's language that was in Ortega. That's just saying over what you said. I'm asking you, does it do any work in figuring out the constitutional violation? I read the instruction as a whole, but if the instruction as a whole has a problem, then I've got to look at the parts. Well, could I have the question again, Your Honor? Of course. I'm just out of time, but I want to make sure I understand it. You keep saying, well, but it shows what's objectively reasonable, but I'm saying where does that fit into the analysis? Does it fit into the constitutional analysis, or does it fit into the clearly established prong? I think it fits into the constitutional analysis. You're not looking at what's in the state of mind of the officer, but what you are doing and what that instruction set allowed this jury to do was to look at the conduct of Officer Frey as described in the testimony and measure that against the factors set forth in the instruction. In Instruction 17, for example, that lays out the Graham factors. And, of course, we know an analysis of the Graham factors is part of a prong-one analysis. It's determining ultimately whether on this balance, whether or not the imposition on the rights of the individual are outweighed by the government's interest in securing this person immediately into custody. So I do believe that is part of a prong-one analysis and does speak to that constitutional element of the claim. And the reason I answered your question as I did, Judge Smith, is I don't think that you get into the person's state of mind when you're assessing constitutionality. There's one point that you haven't really addressed, which I think your colleague is pushing, and that is the appellant presented evidence to the jury that Reese was retaliating against Morales when he pepper-sprayed her. And I think it's clearly established the officer can't use the pepper spray in retaliation. So how do I determine, based on what the jury found, that he was not retaliating or that Reese was not retaliating? You look at what claim was asserted against Officer Reese. There was a single claim that was excessive force in violation of the Fourth Amendment. There was no First Amendment claim. There was no claim that he was taking some action against her because of free speech rights. And I know I'm out of time, and so I'll just wrap up with this point. I think this focus on a possible First Amendment issue is also a place where, respectfully, I believe Judge Kuhnhauer got it wrong in his assessment of attorney's fees because he ends up finding, as a significant outcome of this case, something relating to First Amendment. And I think if you look at the three-part test under this Ninth Circuit's opinion, of course you won't reach fees if you find in favor of Officer Reese. But respectfully, I believe he got it wrong. The ultimate test is to measure the success of the underlying case against what was sought. And in this case, there was no success against Fry, and there was an award of zero with respect to Officer Reese. So I don't believe the evidence exists to allow overcoming the presumption of a no-fee award if this Court reaches that issue. So trying to sum up your argument, what you're really telling me is don't worry about that retaliation claim because it wasn't pressed against the officer. It was only the excessive force claim? That is correct. That's the only claim that went to the jury. But I don't understand. You don't need a First Amendment claim to say that he was trying to retaliate. The reason he did it was he was retaliating against me. I don't think you really need a First Amendment claim to say that. That's like saying that you need a 14th Amendment claim when you say the reason he shot me or the reason he retaliated was because I was African American. I agree with that, Your Honor, and that was not my entire argument. But the issue that was submitted was a claim of excessive force based upon and if you look very specifically, if you look at the closing statement of counsel, which happens to be in this record, and I'll just make a mention of it. It's in, I think it's Volume 4, and it's at page 144 of the record. There is testimony very specifically that the only claim against Reese relates to his use of the pepper spray. And the statement is even made that at the time the pepper spray was being applied, Officer Reese would have no way of knowing why Officer Fry was conducting the arrest in the first place. So it wasn't pitched that he was somehow retaliating against her based on an earlier contact. I acknowledge that there is evidence in the record about, and he testified about having an earlier contact with her in a statement that she made in that regard. Thank you. Thank you. Mr. Parker, would you please put two minutes back on? We took a little bit of your time in questioning, so I want to give you some rebuttal time. Just to that last point, in another portion of the closing argument, I talk about the retaliation. I talk about how could it be possible for him to remember two years later a conversation between him and a person he had never met before unless he was retaliating, and I'm sure that's the reason that the jury ruled the way it did. And with respect to whether or not that violates the First Amendment, that's not the point. The point is can you get qualified immunity if you use force on purpose or you use force in retaliation, and I suggest that you cannot. And another thing counsel has repeatedly stated is that she was resisting arrest, she was under arrest, she was this and she was that. It's possible that the jury found that, but without specific questions, we don't know that the jury found that because Morales' testimony was that as she walked by, all of a sudden she was yanked by her collar and yanked over the fence line. Her glasses flew off. She was surrounded. She doesn't really know how she got to her feet, and there was at least four or five other officers present. And as you watch the video, none of the officers initially that pulled her over and tried to subdue her was Officer Reese. Officer Reese comes later from a completely different area of the protest, and he walks up to her and he sprays her in the face, he grabs the back of her leg, and for some reason he decides he's going to be the one to take her down and handcuff her. None of that was necessary. And if the jury had been given instructions that said if you find a violation of the Fourth Amendment, say yes, and then if you find the second one, say yes or no, we wouldn't be here. But the jury was never given a chance to split, so we don't know what they actually found. We can assume that possibly they found that Fry did not use excessive force. We can assume they possibly found that Fry did not arrest without probable cause, but we don't know that because the way the jury instructions were written, it gives them a second choice. Look, you can find a violation of the law. You can find that excessive force was used. You can find there was no probable cause to arrest. I think we have your point in mind. Thank you. All right. I'd like to thank both of you for the argument this morning. It's a very interesting and complicated case. The case just argued, Morales v. Fry, is submitted. We'll next hear argument in Murray v. Southern Root Maritime.
judges: McKeown, Bea, N.R. Smith